UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOLD PEARL RECORDS, LLC,

        Plaintiff,

                                     Case No. 23-cv-10151
v.                                Honorable Linda V. Parker

CITY SKETCHES, INC., ROBERT
GARFIELD BALDWIN, and
FUNKY ONION PUBLISHING,

        Defendants.
_____/

**OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTIONS TO DEEM ITS REQUESTS FOR**
**ADMISSION ADMITTED (ECF NO. 72), FOR SUMMARY JUDGMENT**
**(ECF NO. 74) AND FOR DEFAULT JUDGMENT (ECF NO. 75), DENYING**
**BALDWIN'S MOTION (ECF NO. 76), AND DENYING AS MOOT GOLD**
**PEARL'S MOTION TO STRIKE (ECF NO. 78)**

On January 19, 2023, Plaintiff Gold Pearl Records, LLC ("Gold Pearl")

initiated this lawsuit against Defendants City Sketches, Inc. ("City Sketches"),

Robert Garfield Baldwin ("Baldwin"), and Funky Onion Publishing ("Funky

Onion") (collectively "Defendants").  In an Amended Complaint, filed July 31,

2023, Gold Pearl alleges the following claims against Defendants: (I) breach of

contract; (II) declaratory judgment; (III) trade secret misappropriation in violation

of the federal Defend Trade Secrets Act; (IV) trade secret misappropriation in

violation of Michigan's Uniform Trade Secrets Act; (V) copyright infringement

under the federal Copyright Act; (VI) false designation of origin under the Lanham Act; (VII) trademark infringement under the Lanham Act; (VIII) deceptive trade practices; (IX) conversion; and (X) unjust enrichment.  (ECF No. 31.)  Defendants filed an Answer to the Amended Complaint and a Counter-Complaint against Gold Pearl alleging breach of a July 29, 2021 "Agreement for 'I Got My Happy Back.'" (ECF No. 32.)

The matter is presently before the Court on the following motions:

- Gold Pearl's motion to deem its Requests for Admission admitted (ECF No. 72);

- Baldwin's motion "to Dismiss Frivolous Claims with Prejudice," to "Impose Sanctions for Bill-Padding Tactics," and "Confirm Music Copyright Compliance" (ECF No. 76);

- Gold Pearl's motion for summary judgment (ECF No. 74);

- Gold Pearls' motion for a default judgment against City Sketches, Inc. (ECF No. 75); and

- Gold Pearl's motion to strike Baldwin's motion (ECF No. 78).

For the reasons set forth below, the Court is granting Gold Pearl's motions to deem the matters in its RFAs admitted, for a default judgment, and for summary judgment.  The Court is denying Baldwin's motion and denying as moot Gold Pearl's motion to strike that motion.

2

## I.      Gold Pearl's Motion to Deem Admitted its Requests for Admission

On September 30, 2024, Gold Pearl served Requests for Admission on Defendants' counsel.  (ECF No. 72-2 at PageID.881 ¶ 3.)  The time for Defendants to respond was November 30, 2024.[1]  (*Id.* ¶ 4.)  When Defendants failed to timely respond, Gold Pearl's counsel sent an email to Defendants' counsel requesting to meet.  (*Id.*)  At that time, defense counsel requested another copy of Gold Pearl's requests, which he received on November 25, 2024.  (*Id.* at PageID.881-82 ¶¶ 6-7.)  Defendants did not thereafter respond to Gold Pearl's Requests for Admission.

Therefore, on April 29, 2025, Gold Pearl moved to have the matters in the Requests for Admission deemed admitted.  (ECF No. 72.)  Baldwin filed a "response" to the motion, which is actually a letter he sent to Gold Pearl's counsel, dated April 28, 2025.  (*See* ECF No. 73.)  The letter fails to address Gold Pearl's motion, its Requests for Admission, or Defendants' failure to respond to them.

Federal Rule of Procedure 36 "permits one party to request admissions as to a broad range of matters by another party, including ultimate facts and the application of law to fact."  *Goodson v. Brennan*, 688 F. App'x 372, 375 (6th Cir. 2017) (citing *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009)).  Pursuant to the rule, "[a] matter is admitted unless, within 30 days after being

---

[1] Pursuant to Federal Rule of Civil Procedure 36(a)(3), responses to requests for admission are due within 30 days of service unless the parties stipulate to a shorter or longer time.  The Court assumes the parties agreed to a longer deadline.

3

served [or a different time agreed to by the parties or ordered by the court], the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).  "A matter admitted under [Rule 36] is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission."  Fed. R. Civ. P. 36(b).

By failing to respond to Gold Pearl's Requests for Admission, or filing a motion for relief, Defendants "admitted and conclusively established as fact all statements therein."  *Goodson*, 688 F. App'x at 375.  Therefore, the Court is granting Gold Pearl's motion to deem the matters in its requests admitted (ECF No. 72.)

## II.     Gold Pearl's Motion for Default Judgment Against City Sketches

Federal Rule of Civil Procedure 55 governs the entry of default judgment. To obtain a default judgment under Rule 55(b)(2), a litigant must first obtain an entry of default pursuant to Rule 55(a).  Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55(b) allows the Court to enter a judgment by default upon application of a party.  Fed. R. Civ. P. 55(b).

"The effect of a default judgment is that the 'factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 403 (6th Cir. 2022) (emphasis removed) (quoting 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Civil § 2688.1 (4th ed. 2022)); *see also Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (holding that default judgment "does not resolve issues relating to damages"). "[A] default admits only the defendant's liability but the amount of damages must be proved." *Id.* (internal quotation marks and citation omitted).

Defendants initially were represented by counsel in this matter. That attorney subsequently moved to withdraw due to a breakdown in the attorney-client relationship. (ECF No. 51.) On December 17, 2024, the Court granted counsel's motion and stayed the matter for thirty days to give Defendants time to secure new counsel. (ECF No. 53.) The Court warned Defendants in its decision that, as a corporate entity, City Sketches could not proceed without an attorney. (*Id.* at PageID.714-15.) The Court further warned that if City Sketches failed to secure new counsel within thirty days, its defenses to Gold Pearl's claims could be stricken and its counterclaim against Gold Pearl dismissed. (*Id.* at PageID.715.)

On February 7, 2025, the Court lifted the stay. (*See* ECF No. 55.) Because counsel had not appeared for City Sketches—or any defendant—by that date, the

5

Court struck its defenses to Gold Pearl's claims and dismissed its counterclaim against Gold Pearl.  (*Id.*)  Gold Pearl subsequently requested a Clerk's Entry of Default against City Sketches (ECF No. 68), which the Clerk thereafter issued (ECF No. 70).  Gold Pearl then moved for default judgment against City Sketches.  (ECF No. 75.)

The Court holds that Gold Pearl is entitled to a default judgment against City Sketches on the claims alleged in the Amended Complaint pursuant to Rule 55(b).  Based on the facts now deemed admitted and discussed below, the Court also concludes that Gold Pearl is entitled to the damages it seeks against City Sketches.

## III.   Gold Pearl's Motion for Summary Judgment

### A.   Applicable Standard

Gold Pearl moves for summary judgment under Federal Rule of Civil Procedure 56 as to its claims against Baldwin in the Amended Complaint and as to Baldwin's breach of contract counterclaim.  (ECF No. 74.)  No response has been filed to the motion.

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

6

party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, "[t]he party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party." *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Liberty Lobby*, 477 U.S. at 248). The non-movant's evidence generally must be accepted as true and "all justifiable inferences" must be drawn in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255.

When no response is filed to a summary judgment motion, the court may rely upon the facts advanced by the movant and supported by record evidence. *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003). As the Sixth Circuit stated in *Spurlock*:

> Where no response to a summary judgment motion is properly before a district court, the court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." [*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1470-80 (6th Cir. 1989)]. Rather, the district court may rely upon the facts advanced by the movant. *Id.* Federal Rule of Civil Procedure 56(e) requires that the nonmoving party's response designate specific facts demonstrating the existence of genuine issues of material fact. Fed. R. Civ. P. 56(e). The nonmoving party is deemed to have waived its opportunity to designate facts in accordance with Rule 56(e) when it fails to properly file a response. [*Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405

7

(6th Cir. 1992)].  This court has stated that it is not the role of the district court to develop facts for the nonmoving party.  *Id*. at 406.

79 F. App'x at 839.

### B.      Factual Background

Diedre Anise Blakesleay Sims is a songwriter, melody composer, singer, and executive producer, and the sole member and owner of Gold Pearl.  (ECF No. 74-3 at PageID.944 ¶¶ 1, 3.)  Gold Pearl owns the master recordings, including all work product and intellectual property, of Sims.  (*Id*. ¶ 3.)  This includes musical recordings forming an extended play album released in 2020 titled "Straight from my Soul."  (*Id*. ¶ 4.)  The album includes the following songs: "STRAIGHT FROM MY SOUL," "SMILE," "COULD IT BE LOVE," "I DO," "OLD SCHOOL LOVE," "STRAIGHT FROM MY SOUL [Radio Edit]", "SMILE [Radio Edit]", "COULD IT BE LOVE [Radio Edit]," and "OLD SCHOOL LOVE [Radio Edit]" (collectively, the "EP Masters").  (*Id*.)  Gold Pearl also owns a musical single released in 2022 titled "I GOT MY HAPPY BACK" (the "Happy Back Master").  (*Id.* at PageID.956 ¶ 5.)  Defendants were aware that Gold Pearl owned the EP Masters and Happy Back Master (collectively "Masters").  (*Id*. ¶ 6.)

Gold Pearl has trademark rights in, for example, "DEE DEE DAVIS," "STRAIGHT FROM MY SOUL," "SMILE," "COULD IT BE LOVE," "I DO," "OLD SCHOOL LOVE," and "I GOT MY HAPPY BACK" via the use, distribution, and sales of the Masters worldwide, including throughout Michigan

and the United States.  (*Id.* ¶ 7.)  Gold Pearl also is the owner of United States trademark applications for these marks.  (*Id.* ¶ 8.)  Defendants are aware of Gold Pearl's trademarks.  (*Id.* ¶ 9.)

Sims is the featured artist, singer, lyrics author, and melody composer for "STRAIGHT FROM MY SOUL" on the EP Masters.  (*Id.* ¶ 10.)  She is the featured artist, singer, and lyrics author for "SMILE," "I DO," and "STRAIGHT FROM MY SOUL" on the EP Masters.  (*Id.* at PageID.956-57 ¶ 10.)  Sims is the featured artist, singer, and lyrics author for "I GOT MY HAPPY BACK" of the Happy Back Master.  (*Id.* at PageID.957 ¶ 10.)

Gold Pearl is the exclusive owner of United States Copyright Registrations for the sound records, performances, music, and lyrics for the songs above.  (*Id.* ¶ 11.)  Defendants were aware of Gold Pearl's copyrights but willfully engaged in the unauthorized copying of derivative works, distribution, and digital audio transmission of at least constituent elements of the original works of the Masters. (*Id.* ¶ 12.)

Baldwin owns and controls City Slick.  (ECF No. 32 at PageID.620 ¶ 6.) Funky Onion, a division of City Slick, is controlled by Baldwin.  (*Id.* ¶¶ 5, 6.) Defendants provide work for hire music production and digital distribution services.  (*Id.* at PageID.622 ¶ 15; *Id.* at PageID.624 ¶ 27.)

9

Gold Pearl entered into a series of agreements with Defendants, including a Digital Distribution Agreement dated November 16, 2017, an Artist/Producer's Letter of Agreement dated January 27, 2020, a Split Sheet Agreement dated July 8, 2020, a Distribution Agreement Addendum dated February 22, 2021, and an "Agreement for I GOT MY HAPPY BACK" dated July 29, 2021 (collectively the "Agreements").  (ECF No. 74-3 at PageID.957-58 ¶ 13; *see also* ECF Nos. 31-2 to 31-6.)  The Agreements required Defendants to distribute all payments and statements in full to Sims.  (ECF No. 32 at PageID.624 ¶ 29.)

In the Agreements, Defendants also promised that no additional deals would be entered into without the mutual consent of the parties.  (ECF No. 32 at PageID.625 ¶ 31; ECF No. 74-3 at PageID.958 ¶ 18.)  Defendants entered into a separate agreement with The Orchard and/or Sony/ATV Music Publishing relating to Sims.  (RFA No. 5.)  Defendants entered into third-party agreements without the knowledge or consent of Gold Pearl or Sims.  (ECF No. 74-3 at PageID.961 ¶ 41; *Id.* at PageID.969 ¶ 109.)  Defendants did not disclose these agreements to Sims before January 19, 2023.  (RFA No. 6; ECF No. 74-3 at PageID.960 ¶ 35.)  Defendants also received one or more payments and royalty statements in connection with Sims that were not disclosed to Sims.  (RFA Nos. 7, 8.)

Creative materials prepared and paid for by Gold Pearl or Sims were Sims' property under Section 2 of the parties' Digital Distribution Agreement.  (RFA No.

9; ECF No. 74-3 at PageID.958 ¶ 15.)  Section 5 of the Digital Distribution Agreement provides that the Masters, from the inception of the recording thereof and all reproductions derived therefrom, together with the performances embodied theron, are Sim's property, free from any claims by Defendants.  (RFA No. 10; ECF No. 74-3 at PageID.958 ¶ 17.)  Creative material Sims paid for also were her sole property.  (ECF No. 74-3 at PageID.958 ¶ 15.)  Sims and Gold Pearl owned the Masters pursuant to Section 3 of the Artist/Producer's Letter of Agreement.  (RFA No. 12; ECF No. 74-3 at PageID.958 ¶ 19.)

The Agreements were terminated as of at least February 11, 2022, pursuant to Gold Pearl's Notice Letter to Defendants.  (RFA No. 14.)  Defendants were required to provide full access to royalty information and online access.  (ECF No. 32 at PageID.625 ¶ 33.)  Defendants did not provide Sims or Gold Pearl with full access to royalty information related to Sims prior to January 19, 2023.  (RFA No. 16.)  They also failed to provide Gold Pearl or Sims with login and password information to access a digital royalty platform containing statement information in connection with the EP Masters.  (RFA No. 17.)

Under the Agreement for "I GOT MY HAPPY BACK," Defendants were required to provide the Happy Back Master to Gold Pearl and obtain Gold Pearl's approval no later than August 31, 2021.  (RFA No. 18; ECF No. 23 at PageID.434-

35 ¶ 36; ECF No. 74-3 at PageID.959 ¶ 23.)  Defendants failed to do so.  (RFA No. 19; ECF No. 74-3 at PageID.959 ¶ 24.)

Defendants proposed various tracks of "I GOT MY HAPPY BACK" containing non-public, confidential, and secret recordings never approved by Gold Pearl.  (ECF No. 74-3 at PageID.959 ¶ 26.)  These tracks were unacceptable to Gold Pearl, and Defendants told Gold Pearl to have someone else produce the Happy Back Master.  (*Id*. at PageID.965 ¶ 71.)  Gold Pearl informed Defendants of the various issues in the unapproved tracks, asked Defendants to fix them, and expressly instructed Defendants not to proceed with mastering without Gold Pearl's approval.  (*Id.* at PageID.959 ¶ 27.)  Defendants nevertheless disclosed the unapproved tracks to third parties for audio mixing and mastering, without Gold Pearl's approval.  (*Id*. at PageID.959-60 ¶¶ 28-30.)

Gold Pearl and Sims fully performed their obligations under, and paid all fees agreed to in, the Agreements.  (ECF No. 74-3 at PageID.971 ¶¶ 126, 127.)  They have caused Defendants no harm.  (*Id.* ¶ 127; RFA No. 21.)  Defendants, in comparison, breached the Agreements, willfully engaged in unauthorized copying, making of derivative works, distribution, and digital audio transmission of at least constituent elements of the original works of the Masters.  (ECF No. 74-3 at PageID.958 ¶ 12; *Id.* at PageID.967 ¶ 91.)  Defendants possess electronic files related to the creation, production, and arrangement of the Masters, for example

Pro Tool files, project files, stem files, recordings, and other information associated with the Masters (collectively "Component Files").  (ECF No. 32 at PageID.630 ¶ 64; ECF No. 74-3 at PageID.963 ¶ 51.)  The Masters include and are created from the Component Files.  (ECF No. 32 at PageID.630 ¶ 65; ECF No. 74-3 at PageID.963 ¶ 52.)

The Component Files contain trade secrets, including unreleased and unpublished recordings and information that have actual or potential independent value from not being generally known.  (ECF No. 74-3 at PageID.963 ¶ 53; *Id.* at PageID.966 ¶¶ 82-83.)  Defendants misrepresented authorship, ownership, and attributions for the Masters to third parties.  (ECF No. 74-3 at PageID.968-69 ¶¶ 94, 104, 108; *Id.* at PageID.961 ¶ 37.)  Defendants, without Gold Pearl's consent, created and used fictitious labels related to the EP Masters and distributed the EP Masters using Gold Pearl's trademarks in connection with the fictitious label.  (*Id.*)  Defendants also engaged in undisclosed deals and failed to disclose and withheld from Gold Pearl and Sims revenue, royalties, and payments.  (*Id.* at PageID.969 ¶ 198.)

Defendants have retained Gold Pearl's trade secrets, including the Component Files containing unreleased recordings comprising secret, confidential, and non-public information.  (*Id*. at PageID.966 ¶ 85.)  Defendants have disclosed Gold Pearl's trade secrets to third parties, without Gold Pearl's consent.  (*Id*. at

PageID.967 ¶ 87.) Defendants have refused to provide the Component Files of the Masters to Gold Pearl. (*Id*. ¶ 86.) Defendants have distributed Gold Pearl's trade secrets through interstate commerce through their digital distribution. (*Id.* at ¶ 88.)

Defendants' conduct has caused, and will continue to cause, Gold Pearl irreparable harm, including the loss of confidentiality of Gold Pearl's trade secrets, the loss of its advantageous competitive position in the industry, and the loss of goodwill. (*Id*. ¶ 89.) Defendants have misappropriated Gold Pearl's trade secrets by acquiring, using, and disclosing them without Gold Pearl's consent and with knowledge that they were acquired by improper means. (*Id*. ¶ 90.)

Defendants' misconduct has damaged Gold Pearl in the amount of $150,000. (RFA Nos. 23-24, 26-31.) Defendants' infringement has been willful. (RFA Nos. 25, 27.) Defendants willfully engaged in conversion of the Masters for Defendants' own use and benefit. (RFA No. 32.) Gold Pearl has incurred attorney fees and costs of at least $90,000 as a result of Defendants' misconduct. (RFA No. 34.)

### C. Claims - Applicable Law & Analysis

#### 1. Breach of Contract

Under Michigan law, to prevail on its breach of contract claim, Gold Pearl must show "(1) a contract (2) that was breached and (3) damages." *Stackpole Int'l Engineered Prods., Ltd. v. Angstrom Auto. Grp., LLC*, 52 F.4th 274, 283 (6th Cir.

14

2022) (citing *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014)).  Based on the facts set forth above, Gold Pearl shows that Defendants breached the terms of one or more of the Agreements.  They failed to deliver the recorded master of "I Got My Happy Back" by the contractual deadline, entered additional deals without the consent of Gold Pearl or Sims, failed to provide full access to royalty information and online access, and received one or more payments in connection with Sims or deals not disclosed to Sims.  Gold Pearl shows that it suffered $150,000 in damages as a result of Defendants' breach.

The Court therefore concludes that Gold Pearl is entitled to summary judgment on its breach of contract claim.

### 2.      Trade Secret Misappropriation

The Sixth Circuit has provided the following definition of the term "trade secret" under the federal Defend Trade Secrets Act ("DTSA"):

> "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if" (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."

15

*James B. Oswald Co. v. Neate*, 98 F.4th 666, 675 (6th Cir. 2024) (quoting 18

U.S.C. § 1839(3)).  The Michigan Uniform Trade Secrets Act ("MUTSA") defines

a "trade secret" as "'information, including a formula, pattern, compilation,

program, device, method, technique, or process' that is the subject of reasonable

efforts to maintain its secrecy and derives independent economic value from that

secrecy." *B&P Littleford, LLC v. Prescott Mach., LLC*, Nos. 20-1339, 20-1451,

2021 WL 3732313, at *5 (6th Cir. Aug. 24, 2021) (quoting Mich. Comp. Laws

§ 445.1902(d)).  Under both statutes, trade secret misappropriation occurs

> when [a trade secret] is acquired by a person who knows or has reason
> to know that the trade secret was acquired by improper means; or
> when it is disclosed or used without consent by a person who [a] used
> improper means to acquire it, [b] knew or had reason to know it was
> acquired by another by improper means, or [c] before a material
> change of his or her position, knew or had reason to know that it was a
> trade secret and that knowledge of it had been acquired by accident or
> mistake.

*Id.* (quoting Mich. Comp. Laws § 445.1902(b) and citing 18 U.S.C. § 1839(3)).

To recover under the Defend Trade Secrets Act, Gold Pearl must show "(1)

the existence of a trade secret . . .; (2) that is related to a product or service used in,

or intended for use in, interstate or foreign commerce; and (3) the misappropriation

of that trade secret." *Shepard & Assoc., Inc. v. Lokring Tech., LLC*, No. 24-3348,

2025 WL 1420931, at *5 (6th Cir. May 16, 2025) (quoting *In re Island Indus., Inc.*,

No. 23-5200, 2024 WL 869858, at *2 (6th Cir. Feb. 29, 2024) (quoting *Oakwood

Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)) (alterations removed).

16

The first and third elements are required to establish a claim under MUTSA.  *See Radiant Glob. Logistics, Inc. v. Furstenau*, No. 18-cv-12783, 2019 WL 697004, at *8 n.2 (E.D. Mich. Feb. 20, 2019).

Gold Pearl satisfies the elements required to prove its misappropriation claims under federal and Michigan law.  Defendants accessed and misappropriated trade secret, confidential, and non-public information of Gold Pearl and Sims, including emails, electronic files, and other business and personal information. The Component Files also contain trade secrets, including unreleased recordings and information having actual or potential independent value based on not being generally known.  Gold Pearl has made reasonable efforts to maintain their secrecy.

Defendants have disclosed these trade secrets to third parties, without Gold Pearl's consent and knowing that they were acquired through improper means. Gold Pearl is therefore entitled to summary judgment as to both claims.

### 3.    Copyright Infringement

Gold Pearl must satisfy two elements to prove its copyright infringement claim against Defendants: "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original."  *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 667 (6th Cir. 2024) (quoting *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Gold Pearl establishes both elements.

Gold Pearl owns the Masters subject to copyrights.  Despite being aware of Gold Pearl's exclusive ownership, Defendants willfully engaged in unauthorized copying, derivative works, distribution, and digital audio transmission of the Masters, and knowingly induced, caused, or materially contributed to infringement of the copyrights by third parties.  Therefore, Gold Pearl is entitled to summary judgment on its copyright infringement claim.

### 4.    Trademark Infringement

The Lanham Act protects registered copyrights, trademarks, and patents.  In relevant part, it provides:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.  Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1).  To demonstrate its claim for trademark infringement under the statute, Gold Pearl must show (1) that it owns a trademark, (2) Defendants used the mark in commerce without authorization, and (3) the use "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (quoting *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 515 (6th Cir. 2007)).  Based on the facts set forth above, Gold Pearl satisfies these elements.

Gold Pearl and Sims are the exclusive owners of the trademarks used in connection with the Masters.  Defendants used the trademarks without Gold Pearl's or Sims' consent by *inter alia* distributing the EP Masters under the trademarks. Such use is misleading, deceiving, or confusing to consumers as to the origin of the goods and Defendants wrongfully benefitted from Gold Pearl's goodwill.  Gold Pearl is, therefore, entitled to summary judgment on its trademark infringement claim.

### 5.     False Designation of Origin

The Lanham Act also provides, in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with

another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  To establish its false designation of origin claim under the statute, Gold Pearl must show that "(1) the false designation has a substantial economic effect on interstate commerce; and (2) the false designation creates a likelihood of confusion." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998); *see also Interactive Prods. Corp. v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 694 (6th Cir. 2003).

Gold Pearl shows that, by using its trademarks, Defendants have caused confusion as to the affiliation, connection, or association between Defendants and Gold Pearl and as to the origin of the EP Masters.  By falsely designating the origin of the Masters, Defendants also have caused confusion as to the affiliation between Defendants and Sims as to their origin.  Thus, Gold Pearl is entitled to summary judgment on its false designation of origin claim.

### 6.    Deceptive Trade Practices

Michigan's Consumer Protection Act prohibits deceptive methods and unfair trade practices, including conduct "[c]ausing a probability of confusion or

misunderstanding as to the source, sponsorship, approval, or certification of goods or services." Mich. Comp. Laws § 445.903(1)(a). Again, Defendants misrepresented their ownership rights in and attributions for the EP Masters to third parties. Baldwin also misrepresented himself as a featured artist, author, composer, and producer of the EP Masters. These misrepresentations, and others, likely cause confusion, mistake, and deception as to the affiliation between Defendants and Gold Pearl, and as to the origin of the EP Masters.

### 7.    Conversion

Under Michigan law, common law and statutory conversion requires a "distinct act of dominion wrongfully exerted over [the plaintiff]'s property in denial of or inconsistent with [the plaintiff's] rights therein." *In re Romanzi*, 31 F.4th 367, 381 (6th Cir. 2022) (quoting *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136, 141 (Mich. 2015)). Statutory conversion requires the additional "a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if the purpose is not the object's ordinarily intended purpose." *Id*. (quoting *Aroma Wines*, 871 N.W.2d at 149). Treble damages may be awarded to a plaintiff prevailing on a statutory conversion claim under Michigan's statute. Mich. Comp. Laws § 600.2919a(1).

21

Gold Pearl shows that Defendants engaged in common law and statutory conversion.  Defendants possessed electronic files related to the creation, production, and arrangement of the Masters, including Pro Tool files, project files, stem files, recordings, and other information associated with the Masters. Defendants denied Gold Pearl's right of immediate possession of the Masters, including the Component Files.  Defendants converted this property for their own use.  Thus, Gold Pearl is entitled to summary judgment for conversion.

### 8.    Unjust Enrichment

The elements of a claim for unjust enrichment under Michigan law are: "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to [the] plaintiff because of the retention of the benefit by [the] defendant." *Innotext, Inc. v. Petra'Lex USA Inc.*, 694 F.3d 581, 594 (6th Cir. 2012) (quoting *Barber v. SMH (US) Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993)).  For the reasons discussed above, Gold Pearl establishes these elements.  However, while "the law operates to imply a contract in order to prevent unjust enrichment[,]" it does so "only if there is no express contract covering the same subject matter." *Id*. (quoting *Barber*, 509 N.W.2d at 796).  Because Gold Pearl demonstrates the existence of contractual agreements governing its relationship with Defendants, the Court declines to enter summary judgment in its favor on this claim.

**9.     Defendants' Breach of Contract Counterclaim**

The elements for breach of contract were set forth before.  Defendants' claim against Gold Pearl fails because Gold Pearl and Sims fully performed their obligations under the parties' contracts, including paying all agreed-upon fees.  The Court, therefore, is granting summary judgment to Gold Pearl on Defendants' counterclaim.

**D.     Relief**

Having established Gold Pearl's entitlement to summary judgment in its favor on the claims alleged in the Amended Complaint, the Court turns to Gold Pearl's request for an award of its damages, costs, and attorney's fees and for injunctive and declaratory relief.

Gold Pearl establishes that it suffered actual damages of $150,000 due to Defendants' misconduct.  Based at least on its statutory conversion claim, Gold Pearl is entitled to treble damages of $450,000.  Gold Pearl establishes that Defendants acted deliberately and willfully, thus it also is entitled to an award of its costs and reasonable attorney fees under the Lanham Act 15 U.S.C. § 1117(a).  The Court also finds that Gold Pearl is entitled to the injunctive and declaratory relief sought in its motion.

23

## IV.     Baldwin's Motion

In his motion, Baldwin contends that Gold Pearl's claims are frivolous, that Gold Pearl has pursued frivolous claims and motions to pad its billings, and that newly submitted Copyright Office registrations prove that Defendants complied with the Agreements and, presumably, copyright law.  Baldwin does not attach any official copyright registrations to the motion, however.  Nor does the Court find any evidence in the record to conclude that Defendants held copyrights negating Gold Pearl's claims in this lawsuit.  For the reasons discussed above, Gold Pearl's claims are not frivolous.  Nor are the motions it has filed.

For these reasons, the Court is denying Baldwin's motion and denying as moot Gold Pearl's motion to strike Baldwin's motion.

## V.     Conclusion

For the reasons set forth above, the Court **GRANTS** Gold Pearl's motion to deem admitted its requests for admission (ECF No. 72) and for default judgment (ECF No. 75.)  The Court **GRANTS** Gold Pearl's motion for summary judgment as to the countercomplaint and all claims in the Amended Complaint, with the exception of its unjust enrichment claims (ECF No. 74).  The Court **DENIES** Baldwin's motion (ECF No. 76) and **DENIES AS MOOT** Gold Pearl's motion to strike Baldwin's motion (ECF No. 78).

Within fourteen (14) days, Gold Pearl shall submit a proposed Judgment through Utilities in CM/ECF consistent with this Opinion and Order.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 18, 2026

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 18, 2026, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager